On Rehearing.
MONROE, J.
[1,2] This court predicated its judgment rejecting plaintiff’s demand against the telephone company upon certain findings of fact, and plaintiff has not complained of that judgment. Those findings were in substance as follows, to wit: That, *637 by reason of a storm during the night, certain heavily charged wires of the electric company had been thrown down, thereby interfering with the operation of the wires of the telephone company; that plaintiff, an experienced lineman, whom the telephone company “could not have had any reason to suspect of being as ignorant of the dangers from electricity as he now pretends,” was sent at 7:30 o’clock on the morning of February 11th simply to ascertain by ocular inspection at what point the wires had come in too close proximity to each other and was warned not to touch the wires; that for the purposes of his mission.and in view of his experience and of the special warning so given, neither the work nor the place to which he was thus assigned was dangerous, but that “thoughtlessly, and for some reason he cannot explain, if for any, he took hold of the telephone wire,” though two of the wires of the electric company were lying across the metal roqf on which he was standing, and! another, the broken end of which was “spitting fire,” had been “prudently” picked up by him from the sidewalk and thrown into the gutter. Our reconsideration of the ease strengthens the conviction that, though plaintiff, perhaps, lacked that realizing sense of the action and effect of electricity which one can imagine would be derived from witnessing a tragedy or being the victim of a near tragedy caused by it, he nevertheless knew, from precept and example, that, in the situation in which he was placed, all wires were to be dealt with as “hot” wires and left untouched, besides which he had been instructed that he was merely to locate the trouble, which, he admits, is done, and could have been done on that occasion, by ocular inspection and was not to attempt to clear the wires. Under such circumstances, there being no danger to him, either in the duty or the place to which he was assigned, save such as might arise from a particular act of his own, against which the knowledge that he possessed and the instruction which he had received should have been sufficient to warn him; his commission of the act was as surely the sole, proximate cause of the injury that he received as the picking up of a newly-made horseshoe, which the visitor in a blacksmith’s’ shop knows is likely to be hot, is the cause of a burned hand. The poles, wires, and attachments, etc., of the defendant were in good order, and the temporary derangement of the wires had been caused by a wind and rain storm of some violence. The witnesses speak of it as having occurred during the preceding night, and those who testify at all as to the time express the opinion that the storm was probably most violent towards morning. W. G. Rose, city electrician, in charge of. the lighting plant, says:
“The wind was blowing very high and there was quite a bit of electricity, and, in the early hours of the morning there was quite a heavy rainfall; * * * it was after midnight that the hardest part came up.”
John Mcllhinney, superintendent of the plant, says:
“There was a storm some time early in the morning. * * * To the best of my knowledge, it was just before daylight.”
[3] Neither of the witnesses speaks more definitely or from positive knowledge as to the time (though it is conceded that the derangement of 'the wires was attributable to the storm), and we are not just now advised of the time at which day breaks in the parish of Acadia upon the 11th of February. We imaginé, however, that it is not very long before 7 o’clock, and it was about that time that Mr. Rose, being informed that some of the electric light wires had been blown down near the Pizzini Hotel and the Mitchell store, directed a messenger to hurry to the plant and tell the engineer to “shut down,” which was done immediately and just in time to save the life of the defendant, *639 who was then lying senseless on the roof of Mitchell’s gallery with the telephone wire grasped in his hands, 1,100 volts of electricity passing through his body, and the metal of the roof burning the scalp from the back of his head. Although, therefore, we do not know whether the interval between the blowing down of the wires and the accident was one of minutes or hours, we do know that, after learning that the wires were down, the officers of the plant lost no time in cutting off the electricity from them and, we may add, lost no time in replacing the wires in position. Upon the former hearing of the case, the view was adopted that the city of Crowley should be held liable because it has and should have in its plant an instrument called a “ground indicator,” by means of which the person in charge should have been enabled to know of the grounding of the wires, but that the instrument was not then in good order, and that the city was to blame for its condition. The conclusion thus reached leaves out the factor of the plaintiff’s negligence; and, moreover, it appears that the “ground detector” does not, like a clock or a steam gauge, impart its information automatically but does so only when specially called on. In other words, the instrument is one whereby certain tests may be applied, at the will of the operator, and certain results obtained; and, as it is hardly to be expected that it will be kept in operation continuously, the question to be here considered is: Assuming that it had been in good order, and that tests had been made at reasonable intervals, or that a test had been made without unreasonable delay after the storm whereby defendant’s electric light wires were blown down, would the derangement of the wires have been ascertained any sooner than it was ascertained? To answer that question it would be necessary for us to know at what time, with reference to that at which the officers of the plant were informed of it, the wires were blown down, and the transcript does not furnish that information; hence the alleged negligence of the city of Crowley, so far as it might affect this case, is not established. Finally, if negligence on the part of the city were established, and we should hold that the negligence of the plaintiff were not the sole, proximate cause of the accident, there can be no doubt that he was negligent and no doubt that his negligence, directly and immediately, contributed to the accident, and he could not recover for that reason. The judgment heretofore handed down having become final in so far as plaintiff’s demand against the telephone company is concerned, it is ordered, adjudged, and decreed that said judgment, in so. far as it condemns the city of Crowley, be set aside, and that the judgment appealed from be now in that respect annulled, avoided, and reversed, the demand of the plaintiff against said city rejected, and this suit dismissed at plaintiff’s cost in both courts. .
PROVOSTY, J.( dissents, adhering to the original opinion.